YOUR HOME VISITING NURSE SERVICES, INC.
*v.* SHALALA, SECRETARY OF HEALTH
AND HUMAN SERVICES

No. 97–1489. Argued December 2, 1998.—Decided February 23, 1999

*Diana L. Gustin* argued the cause and filed briefs for petitioner.

*Lisa Schiavo Blatt* argued the cause for respondent. With her on the brief were *Solicitor General Waxman, Assistant Attorney General Hunger, Deputy Solicitor General Kneedler, Anthony J. Steinmeyer, John P. Schnitker, Harriet S. Rabb, Bruce R. Granger,* and *Henry R. Goldberg.*\*

JUSTICE SCALIA delivered the opinion of the Court.

Under the Medicare Act, Title XVIII of the Social Security Act, 79 Stat. 290, as amended, 42 U. S. C. § 1395 *et seq.* (1994 ed. and Supp. II), the Secretary of Health and Human

---

\**Denise Rios Rodriguez* and *Amy Blumberg Hafey* filed a brief for the American Hospital Association et al. as *amici curiae.*

Services reimburses the providers of covered health services to Medicare beneficiaries, see §§ 1395f(b)(1), 1395h, 1395x(v)(1)(A). A provider seeking such reimbursement submits a yearly cost report to a fiscal intermediary (generally a private insurance company) that acts as the Secretary's agent. See 42 CFR § 405.1801(b) (1997). The intermediary analyzes the cost report and issues a Notice of Program Reimbursement (NPR) determining the amount of reimbursement to which the provider is entitled for the year. See § 405.1803.

As is relevant here, a dissatisfied provider has two ways to get this determination revised. First, a provision of the Medicare Act, 42 U. S. C. § 1395oo, allows a provider to appeal, within 180 days, to the Provider Reimbursement Review Board (Board)—an administrative review panel that has the power to conduct an evidentiary hearing and affirm, modify, or reverse the intermediary's NPR determination. The Board's decision is subject to judicial review in federal district court. § 1395oo(f). Second, one of the Secretary's regulations, 42 CFR § 405.1885 (1997), permits a provider to request the intermediary, within three years, to reopen the reimbursement determination.

Petitioner Your Home Visiting Nurse Services, Inc., owns and operates several entities that provide home health care services to Medicare beneficiaries. Petitioner submitted cost reports for the year 1989 to its fiscal intermediary, and did not seek administrative review of the resulting NPRs within 180 days. Within three years, however, it did ask the intermediary to reopen its 1989 reimbursement determination on the ground that "new and material" evidence demonstrated entitlement to additional compensation. The intermediary denied the request. Petitioner sought to appeal that denial to the Board, but the Board dismissed the appeal on the ground that § 405.1885 divested it of jurisdiction to review an intermediary's refusal to reopen a reimbursement determination.

Petitioner then brought the instant action in Federal District Court, seeking review of the Board's dismissal and of the intermediary's refusal to reopen. In an unpublished opinion, the District Court agreed that the Board lacked jurisdiction to review the refusal to reopen, and rejected petitioner's alternative contention that the federal-question statute, 28 U. S. C. § 1331, or the mandamus statute, § 1361, gave the District Court jurisdiction to review the intermediary's refusal directly. It accordingly dismissed the complaint. The Court of Appeals affirmed. 132 F. 3d 1135 (CA6 1997). We granted certiorari. 524 U. S. 925 (1998).

I

The primary issue in this case is whether the Board has jurisdiction to review a fiscal intermediary's refusal to reopen a reimbursement determination. The regulation that authorizes reopening provides that "[j]urisdiction for reopening a determination . . . rests exclusively with that administrative body that rendered the last determination or decision." 42 CFR § 405.1885(c) (1997). In this litigation, the Secretary defends the position set forth in the Medicare Provider Reimbursement Manual § 2926, App. A, ¶ B.4 (Sept. 1993): "A refusal by the intermediary to grant a reopening requested by the provider is not appealable to the Board, pursuant to 42 CFR § 405.1885(c) . . . ."[1] The Secretary construes the regulation to mean that where, as here, the intermediary is the body that rendered the last determination with respect to the cost reports at issue, review by the Board of the intermediary's refusal to reopen would divest the in-

---

[1] The clause immediately following the quoted portion of the Medicare Provider Reimbursement Manual reads "except for providers which are located within the jurisdiction of the U. S. Ninth Circuit Court of Appeals, where such a refusal to reopen is appealable." § 2926, App. A, ¶ B.4. This exception obviously reflects, not an inconsistency in the Secretary's position, but an acknowledgment of the Ninth Circuit's rejection of that position. See *Oregon* v. *Bowen*, 854 F. 2d 346 (1988).

termediary of its "exclusiv[e]" "[j]urisdiction for reopening a determination." Petitioner, on the other hand, contends that "jurisdiction" in § 405.1885(c) refers only to original jurisdiction over the reopening question, and not to appellate jurisdiction to review the intermediary's refusal. Even if it should win on this point, however, petitioner would only establish that the Board's otherwise extant appellate jurisdiction has not been excluded; it would still have to establish that the Board's appellate jurisdiction is somewhere *conferred*. Another regulation, § 405.1889, says that an intermediary's affirmative decision to reopen and revise a reimbursement determination "shall be considered a separate and distinct determination" to which the regulations authorizing appeal to the Board are applicable; but it says nothing about appeal of a refusal to reopen. Petitioner must thus establish the Board's appellate jurisdiction on the basis of the unelaborated text of the Medicare Act itself.

Petitioner relies upon 42 U. S. C. § 1395oo(a)(1)(A)(i), which says that a provider may obtain a hearing before the Board with respect to a cost report if the provider "is dissatisfied with a final determination of . . . its fiscal intermediary . . . as to the amount of total program reimbursement due the provider . . . for the period covered by such report . . . ." Petitioner maintains that the refusal to reopen a reimbursement determination constitutes a separate "final determination . . . as to the amount of total program reimbursement due the provider." The Secretary, on the other hand, maintains that this phrase does not include a refusal to reopen, which is not a "final determination . . . as to the amount," but rather the *refusal* to make a new determination. The Secretary's reading of § 1395oo(a)(1)(A)(i) frankly seems to us the more natural—but it is in any event well within the bounds of reasonable interpretation, and hence entitled to deference under *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.,* 467 U. S. 837, 842 (1984).

The reasonableness of the Secretary's construction of the statute is further confirmed by *Califano* v. *Sanders,* 430 U. S. 99 (1977), in which we held that § 205(g) of the Social Security Act does not authorize judicial review of the Secretary's decision not to reopen a previously adjudicated claim for benefits.[2] In reaching this conclusion we relied, in part, upon two considerations: that the opportunity to reopen a benefit adjudication was afforded only by regulation and not by the Social Security Act itself; and that judicial review of a reopening denial would frustrate the statutory purpose of imposing a 60-day limit on judicial review of the Secretary's final decision on an initial claim for benefits. *Id.,* at 108. Similar considerations apply here. The right of a provider to seek reopening exists only by grace of the Secretary, and the statutory purpose of imposing a 180-day limit on the right to seek Board review of NPRs, see 42 U. S. C. § 1395*oo*(a)(3), would be frustrated by permitting requests to reopen to be reviewed indefinitely.

Finally, we do not think that the Secretary's position is inconsistent with 42 U. S. C. § 1395x(v)(1)(A)(ii), which provides that the Secretary's cost-reimbursement regulations shall "provide for the making of suitable retroactive corrective adjustments where, for a provider of services for any fiscal period, the aggregate reimbursement produced by the methods of determining costs proves to be either inadequate or excessive." Petitioner asserts that the reopening regulations, as construed by the Secretary, do not create a "suitable" procedure for making "retroactive corrective adjustments" because an intermediary's refusal to reopen a determination is not subject to administrative review. In

---

[2] The relevant portion of § 205(g), as set forth in 42 U. S. C. § 405(g) (1970 ed.), provided that "[a]ny individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days . . . ." See *Califano* v. *Sanders,* 430 U. S., at 108.

support of this assertion, petitioner decries the "double standard" inherent in a procedure that allows the intermediary to reopen (during the 3-year period) for the purpose of recouping *over*payments, but to deny reopening when alleged *under*payments are at issue.

This argument fails for two reasons. First, and most importantly, petitioner's construction of § 1395x(v)(1)(A)(ii) is inconsistent with our decision in *Good Samaritan Hospital* v. *Shalala*, 508 U. S. 402 (1993), in which we held that the Secretary reasonably construed clause (ii) to refer to the year-end reconciliation of monthly payments to providers, see 42 U. S. C. § 1395g, with the total amount of program reimbursement determined by the intermediary. Although we did not specifically consider the procedure for reopening determinations *after* the year's books are closed, we think our conclusion there—that clause (ii) refers to the year-end book balancing—forecloses petitioner's contention that clause (ii) requires any particular procedure for reopening reimbursement determinations. And second, the procedures for obtaining reimbursement would not be "unsuitable" simply because an intermediary's refusal to reopen is not administratively reviewable. Medicare providers already have the right under § 1395oo(a)(3) to appeal an intermediary's reimbursement determination to the Board. Title 42 CFR § 405.1885 (1997) generously gives them a second chance to get the decision changed—this time at the hands of the intermediary itself, but without the benefit of administrative review. That is a "suitable" procedure, especially in light of the traditional rule of administrative law that an agency's refusal to reopen a closed case is generally "'committed to agency discretion by law'" and therefore exempt from judicial review. See *ICC* v. *Locomotive Engineers*, 482 U. S. 270, 282 (1987). As for the alleged "double standard," given the administrative realities we would not be shocked by a system in which underpayments could *never* be the basis for reopening. The few dozen fiscal intermediaries

often need three years within which to discover overpayments in the tens of thousands of NPRs that they issue, while each of the tens of thousands of sophisticated Medicare-provider recipients of these NPRs is generally capable of identifying an underpayment in its own NPR within the 180-day time period specified in 42 U. S. C. § 1395oo(a)(3). Petitioner's invocation of gross unfairness is also refuted by the Secretary's representation that fiscal intermediaries grant between 30 and 40 percent of providers' requests to reopen reimbursement determinations. Brief for Respondent 27, n. 11.

## II

We also reject petitioner's fallback argument that it is entitled to judicial review of the intermediary's refusal to reopen. First, judicial review under the federal-question statute, 28 U. S. C. § 1331, is precluded by 42 U. S. C. § 405(h), applicable to the Medicare Act by operation of § 1395ii, which provides that "[n]o action against . . . the [Secretary] or any officer or employee thereof shall be brought under section 1331 . . . of title 28 to recover on any claim arising under this subchapter." Petitioner's claim "arises under" the Medicare Act within the meaning of this provision because " 'both the standing and the substantive basis for the presentation' " of the claim are the Medicare Act. *Heckler* v. *Ringer*, 466 U. S. 602, 615 (1984).

Second, the lower courts properly declined to issue mandamus to order petitioner's fiscal intermediary to reopen its 1989 reimbursement determination. Even if mandamus were available for claims arising under the Social Security and Medicare Acts,[3] petitioner would still not be entitled to

---

[3] The Secretary urges us to hold that mandamus is altogether unavailable to review claims arising under the Medicare Act, in light of the second sentence of 42 U. S. C. § 405(h), which provides that "[n]o findings of fact or decision of the [Secretary] shall be reviewed by any person, tribunal, or governmental agency except as" provided in the Medicare Act it-

mandamus relief because it has not shown the existence of a "clear nondiscretionary duty," *id.*, at 616, to reopen the reimbursement determination at issue. The reopening regulations do not require reopening, but merely permit it: "A determination of an intermediary ... *may* be reopened ... by such intermediary ... on the motion of the provider affected by such determination," 42 CFR § 405.1885(a) (1997) (emphasis added). To be sure, the Secretary's Medicare Reimbursement Provider Manual § 2931.2 (Feb. 1985) does provide that "[w]hether or not the intermediary will reopen a determination, otherwise final, will depend upon whether (1) new and material evidence has been submitted, or (2) a clear and obvious error was made, or (3) the determination is found to be inconsistent with the law, regulations and rulings, or general instructions." But we hardly think that this disjunctive listing of factors was meant to convert a discretionary function into a mandatory one. As to factor (1), for example, it seems to us inconceivable that the existence of new and material evidence would alone *require* reopening, no matter how unpersuasive that evidence might be. The present case, we might note, involves evidence that was already before the intermediary at the time of its decision. The holding of *ICC* v. *Locomotive Engineers, supra*, that the decision whether to reopen, at least where no new evidence is at issue, is "'committed to agency discretion by law'" within the meaning of the Administrative Procedure Act, and hence unreviewable, see *id.*, at 282, is squarely applicable.

The last point alone would suffice to defeat petitioner's suggestion that we grant it the relief it requests under the judicial-review provision of the Administrative Procedure Act, 5 U. S. C. § 706. In addition, however, we have long held that this provision is not an independent grant of

self. We have avoided deciding this issue in the past, see, *e. g.*, *Heckler* v. *Ringer*, 466 U. S. 602, 616–617 (1984), and we again find it unnecessary to reach it today.

458

subject-matter jurisdiction. *Califano* v. *Sanders*, 430 U. S. 99 (1977).

\*    \*    \*

For the foregoing reasons, the judgment of the Court of Appeals is affirmed.

*It is so ordered.*