170 F.Supp.2d 900 (2001)
GREAT RIVERS HOME CARE, INC., Plaintiff,
v.
Tommy G. THOMPSON, Secretary of the United States Department of Health and Human Services, et al., Defendants.
No. 4:01-CV-90 CEJ.
United States District Court, E.D. Missouri, Eastern Division.
September 28, 2001.
*901 David M. Harris, Scott J. Golde, Greensfelder and Hemker, St. Louis, MO, Charles F. MacKelvie, Mark I. Fishbein, MacKelvie and Associates, P.C., Chicago, IL, for plaintiff.
Joseph M. Landolt, Assist. U.S. Atty., Suzanne J. Gau, Office of U.S. Atty., St. Louis, MO, for defendants.

MEMORANDUM AND ORDER
JACKSON, District Judge.
This matter is before the Court on defendants' motion to dismiss for lack of subject matter jurisdiction. See Fed. R.Civ.P. 12(b)(1). Plaintiff has filed a response in opposition and the issues have been fully briefed.

I. Background

Plaintiff, Great Rivers Home Care, Inc. ("Great Rivers"), is a provider of home health services to Medicare beneficiaries. Defendant Tommy G. Thompson is the Secretary of the United States Department of Health and Human Services ("DHHS"). Defendant Michael McMullan is the Acting Deputy Administrator of the Centers for Medicare & Medicaid Services ("CMMS"), formerly known as the Health Care Financing Administration ("HCFA"). Defendant Blue Cross and Blue Shield Association is chief fiscal intermediary of the Medicare program. Defendant Cahaba Government Benefit Administrators ("Cahaba") serves as plaintiff's fiscal intermediary. Plaintiff brings this action before this Court seeking injunctive relief from defendants' attempts to recoup alleged Medicare overpayments.
*902 Medicare, the federal medical insurance program for the aged and disabled, is governed by Title XVIII of the Social Security Act. 42 U.S.C. §§ 1395-1395ggg. The Medicare program is administered by CMMS, a component of DHHS. Determinations of Medicare home health care service payments are made by private insurance entities, known as fiscal intermediaries, under contract to DHHS. See 42 U.S.C. § 1395h.
Medicare reimburses its participating home health care providers through interim payments. 42 U.S.C. § 1395g(a). These interim payments are made periodically, but not less than monthly. Id. The payments are based on the provider's estimated reimbursable costs. The fiscal intermediary makes estimated payments throughout the year based on the provider's submissions, and then reconciles these estimated interim payments after the fact with the actual reasonable costs incurred by means of an annual cost report that the provider is required to submit at the conclusion of the fiscal year. 42 C.F.R. §§ 413.20, 413.60, 413.64; see also 42 C.F.R. § 413.24. The fiscal intermediary conducts an audit as soon as the cost report is received and makes an initial retroactive adjustment to the provider's account, known as a tentative final settlement. 42 C.F.R. § 413.64(f)(2). Eventually, the fiscal intermediary completes its full audit of the provider's cost report and issues a Notice of Program Reimbursement ("NPR"). The NPR identifies any adjustments to the tentative settlement and states the amounts of any Medicare overpayment, the amount of reimbursement owed to the Medicare program and the reasons for the determination. 42 C.F.R. § 405.1803(a), (b). The regulations state that a fiscal intermediary must issue the NPR within "a reasonable period of time", which "may take as long as one year" See 42 C.F.R. § 405.1803(a); Medicare Provider Reimbursement Manual, Part I, § 2905.1.
If a provider is dissatisfied with the fiscal intermediary's final determination as to the amount of reimbursement due and the amount in controversy is $10,000 or more, as reflected in the NPR, the provider may appeal to the Provider Reimbursement Review Board ("PRRB"). 42 U.S.C. § 1395oo(a); 42 C.F.R. § 405.1835.
Federal law requires the fiscal intermediary to immediately initiate the process of recouping any overpayment by making adjustments to payments currently due the provider. 42 C.F.R. §§ 405 .1803(c), 413.64(f); see also 42 U.S.C. § 1395g(a); 42 C.F.R. § 405.371. Recoupment is the recovery of overpayments by reducing present or future Medicare payments and applying the amounts withheld to the indebtedness. 42 C.F.R. § 405.371(a). Such recoupments are made notwithstanding any request for hearing challenging the overpayment determination. 42 C.F.R. § 405.1803(c).
When a provider claims reimbursement for costs that are similar to costs that were disallowed in the previous fiscal year's NPR, the Medicare Provider Reimbursement Manual ("PRM") requires fiscal intermediaries to deduct the portion of such costs from the tentative final adjustment. PRM, Part I, § 2408.2. This "audit adjustment factor" ensures that costs determined to be unallowable during a prior year's audit are not reimbursed in a tentative final settlement on subsequent cost reports.
On December 1, 1997 plaintiff submitted its cost report for the 1997 fiscal year ("FY 97"). On December 18, 1997 defendant Cahaba issued its tentative final settlement. At the time of the tentative final settlement, Cahaba paid plaintiff over $69,000 in addition to the interim payments *903 received by plaintiff during FY 97. On August 18, 2000, after performing a field audit, Cahaba issued the NPR for FY 97, disallowing approximately $280,000 of plaintiff's claimed costs. Plaintiff appealed the NPR to the PRRB. This matter is scheduled for hearing before the PRRB in March 2002. Cahaba immediately initiated recoupment of the amount it determined Medicare had overpaid plaintiff in FY 97.
On November 11, 1998 plaintiff submitted its cost report for the 1998 fiscal year ("FY 98"). Based upon the costs that were disallowed in FY 97, Cahaba applied an audit adjustment factor and disallowed approximately $380,000 of the claimed costs for FY 98. Cahaba immediately initiated recoupment of the amount it determined Medicare had overpaid plaintiff in FY 98. Cahaba has not yet issued an NPR for FY 98.
On November 23, 1999 plaintiff submitted its cost report for the 1999 fiscal year ("FY 99"). Again, based upon the costs that were disallowed in FY 97, Cahaba applied an audit adjustment factor and disallowed approximately $100,000 of the claimed costs for FY 99. Cahaba immediately initiated recoupment of the amount it determined Medicare had overpaid plaintiff in FY 99. Again, Cahaba has not yet issued an NPR for FY 99.
On November 29, 2000 plaintiff submitted its cost report for the 2000 fiscal year ("FY 00"). Again, based upon the costs that were disallowed in FY 97, Cahaba applied an audit adjustment factor and disallowed approximately $125,000 of the claimed costs for FY 00. Cahaba immediately initiated recoupment of the amount it determined Medicare had overpaid plaintiff in FY 00. Again Cahaba has not yet issued an NPR for FY 00.
Cahaba, in conjunction with CMMS, has allowed plaintiff to repay the Medicare funds it has determined to have been overpaid in FY 97 through FY 00 by means of an Extended Repayment Plan ("ERP"). An ERP allows a provider to repay overpayments over an extended period of time. Currently, approximately $24,000 is being deducted from plaintiff's Medicare reimbursement billing on a monthly basis.
Plaintiff brought this action against defendants seeking a preliminary injunction to enjoin defendants from collecting alleged Medicare overpayments until plaintiff could fully exhaust its administrative remedies within DHHS. In its complaint, plaintiff also requested removal of defendant Cahaba from its position as plaintiff's fiscal intermediary. However, in its response to defendants' motion to dismiss, plaintiff states that it is only seeking preliminary injunctive relief.

II. Discussion

Plaintiff asserts that this Court has jurisdiction pursuant to 28 U.S.C. § 1331 because the action arises under the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 et seq., Title XVIII of the Social Security Act ("Medicare Act"), the Due Process Clause of the Fifth Amendment to the United States Constitution, and the All Writs Act, 28 U.S.C. § 1651. The plaintiff also invokes the Court's original jurisdiction over mandamus actions against federal agencies, pursuant to 28 U.S.C. § 1361.
Defendants argue that this Court lacks jurisdiction over plaintiff's claims because they arise under the Medicare program. Defendants assert that 42 U.S.C. § 405(g) alone governs judicial review of claims arising under the Medicare Act, and that this statute requires plaintiff to fully exhaust its administrative remedies before presenting an action in federal court.
*904 Section 405(g) provides, in relevant part:
Any individual, after any final decision of the [Secretary] made after a hearing to which he was a party ... may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as [the Secretary] may allow.
Section 405(h), made applicable to the Medicare Act by 42 U.S.C. § 1395ii, provides, in part, that "[n]o action against the United States, the [Secretary], or any officer or employee thereof shall be brought under section 1331 or 1346 of title 28 to recover on any claim arising under this subchapter [i.e., the Medicare Act]." 42 U.S.C. § 405(h).
The Supreme Court has held that a "claim arises under the Medicare Act ... [when] both the standing and substantive basis for the ... claim are the Medicare Act." Your Home Visiting Nurse Services, Inc. v. Shalala, 525 U.S. 449, 456, 119 S.Ct. 930, 142 L.Ed.2d 919 (1999). The Supreme Court further interpreted this issue in the recent case of Shalala v. Illinois Council on Long Term Care. 529 U.S. 1, 120 S.Ct. 1084, 146 L.Ed.2d 1 (2000). In Illinois Council the Court held that § 405(h) precludes judicial review under § 1331 and requires channeling virtually all legal claims through the agency's administrative process before such claims can be heard in federal court. 529 U.S. at 13-14, 120 S.Ct. 1084. Refusing to accept the argument that the scope of § 405(h) extended only to claims for monetary benefits, the Court wrote:
Claims for money, claims for other benefits, claims for program eligibility, and claims that contest a sanction or remedy may all similarly rest upon individual fact-related circumstances, may all similarly dispute agency policy determinations, or may all similarly involve the application, interpretation, or constitutionality of interrelated regulations or statutory provisions. There is no reason to distinguish among them in terms of the language or in terms of the purposes of § 405(h).
Id. at 14, 120 S.Ct. 1084. The plaintiff argues that it is seeking only "an opportunity to exercise its constitutional right to a hearing before the Provider Reimbursement Review Board." However, regardless of the type of relief plaintiff is requesting, this case does arise under the Medicare Act. As such, 42 U.S.C. § 405(g) provides the sole basis for judicial review of plaintiff's claims. See Weinberger v. Salfi, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). Therefore, this Court must examine whether plaintiff has complied with § 405(g).
Judicial review under § 405(g) may be obtained only when there has been a final decision of the Secretary. The Supreme Court has interpreted this section as incorporating two distinct concepts: a non-waivable requirement of presentation of any claim to the Secretary of DHHS and a requirement of exhaustion of all administrative remedies, which can be waived. Heckler v. Ringer, 466 U.S. 602, 617, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984).
Defendants argue that plaintiff does not fulfill the presentment requirement because it has not raised its constitutional challenges with the Secretary, nor has it requested the Secretary to name a new fiscal intermediary. Plaintiff does not refute this argument, but instead limits its claims to injunctive relief.
Defendants further argue that plaintiff does not fulfill the exhaustion requirement because it has not yet received a final decision from the Secretary regarding the alleged overpayments from FY 98, FY 99, and FY 00. Plaintiff argues that it cannot *905 gain administrative review on the alleged overpayments until Cahaba issues the NPRs  a process that plaintiff asserts can take over twenty-one months. Plaintiff supports its argument by pointing out that the regulations are written in such a way that the issuance of the NPR is the trigger for the provider's appeal to the PRRB of disallowed costs. Plaintiff asserts that it is in severe economic distress; thus, by the time Cahaba issues the NPRs, giving plaintiff the right to appeal the overpayment determinations, plaintiff will be out of business. Therefore, plaintiff believes that this Court should waive the exhaustion requirement of § 405(g).
The Secretary of DHHS has the discretion to decide when to waive the exhaustion requirement. However, as the Supreme Court held in Mathews v. Eldridge, 424 U.S. 319, 330, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), "cases may arise where a claimant's interest in having a particular issue resolved promptly is so great that deference to the agency's judgment is inappropriate." Thus, Eldridge set out an "entirely collateral" exception to the exhaustion of administrative remedies requirement. In Bowen v. City of New York, 476 U.S. 467, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986), the Supreme Court enumerated the elements of the exception. Specifically, courts must weigh the following factors in determining if waiver of the requirement of administrative exhaustion is appropriate: 1) whether the claim is collateral to a demand for benefits; 2) whether exhaustion would be futile; and 3) whether the plaintiff would suffer irreparable harm if required to exhaust its administrative remedies before obtaining relief. Id. at 483-485, 106 S.Ct. 2022. See School-craft v. Sullivan, 971 F.2d 81, 85 (8th Cir.1992). The Supreme Court recently explained that Eldridge did not so much create an exception to §§ 405(g) and (h), as it required the Secretary to excuse some of its procedural requirements so that its decision would be considered a "final decision" and judicial review could follow under § 405(g). See Illinois Council, 529 U.S. at 24, 120 S.Ct. 1084. The Court stated, "[a]t a minimum, however, the matter must be presented to the agency prior to review in a federal court." Id.
Plaintiff complains that it cannot appeal the alleged overpayments/recoupment decision until the NPR is released. However, as defendants point out, plaintiff has not availed itself of its administrative remedies, namely asking the PRRB for review of Cahaba's failure to release the NPRs. See 42 C.F.R. § 405.1835(c) (a provider has a right to a hearing before the Board if an intermediary's determination concerning the amount of reasonable cost reimbursement due a provider is not rendered within 12 months after receipt by the intermediary of a provider's cost report). Thus, plaintiff has not presented its claim to the Secretary, nor has it shown that exhaustion of this remedy would be futile. Further, the Court disagrees with plaintiff's characterization of its request to enjoin the recoupment process pending appeal of the overpayment decisions as being merely collateral to a claim for benefits. By requesting such relief, plaintiff is essentially urging this Court to set aside agency regulations allowing fiscal intermediaries to immediately start the recoupment process after an overpayment determination has been made. See 42 C.F.R. § 405.1803(c) (such recoupments are made notwithstanding any request for hearing challenging the overpayment determination). Such an action would directly affect plaintiff's Medicare benefits; thus, benefits are not a collateral issue in this instance. As the Eighth Circuit has noted, waiver of administrative remedies is the exception to the general rule, warranted only under exceptional circumstances. Schoolcraft, *906 971 F.2d at 85. No exceptional circumstances are present in this case.
Plaintiff next argues that it is not subject to the exhaustion requirement of § 405(g) because of an exception created in Bowen v. Michigan Academy of Family Physicians, 476 U.S. 667, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986), which limited the scope of the application of 42 U.S.C. § 1395ii to the Medicare Act. In Michigan Academy the Court did carve out a limited exception to § 1395ii and, hence, to § 405(h), which is incorporated in § 1395ii. However, in Illinois Council, 529 U.S. at 19, 120 S.Ct. 1084, the Court clarified "Michigan Academy as holding that § 1395ii does not apply § 405(h) where application of § 405(h) would not simply channel review through the agency, but would mean no review at all." 529 U.S. at 19, 120 S.Ct. 1084. Plaintiffs assert that waiting indefinitely to obtain review is essentially the same as no review at all, this Court cannot agree. However, as discussed above, plaintiff has the ability to request that the NPRs be issued. There is a difference between total preclusion of review and postponement of review. See Illinois Council, 529 U.S. at 19-20, 120 S.Ct. 1084. Although plaintiff argues that it will not financially survive the administrative review process because the ERP payments have pushed plaintiff into a negative cash position, thus making administrative channeling the practical equivalent of a total denial of judicial review, this Court is not persuaded that plaintiff's claims of financial hardship result only from the ERP payments. As stated by the Supreme Court, the reasoning behind the application of § 405(h) is that:
it assures the agency a greater opportunity to apply, interpret, or revise policies, regulations, or statutes without possibly premature interference by different individual courts applying `ripeness and exhaustion' exceptions case by case .... but this assurance comes at a price, namely occasional individual, delay-related hardship.
Id. at 13, 120 S.Ct. 1084. Plaintiff's individual delay-related hardship does not convince this Court to waive the exhaustion requirements in this instance.
Neither the APA, 5 U.S.C. § 551 et seq., nor the All Writs Act, 28 U.S.C. § 1651, provide an independent basis for subject matter jurisdiction. See Califano v. Sanders, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192, (1977); V.N.A. of Greater Tift County v. Heckler, 711 F.2d 1020, 1024, n. 5 (11th Cir.1983); Brittingham v. Commissioner, 451 F.2d 315, 317 (5th Cir.1971). As an alternative basis for jurisdiction, the plaintiff relies on 28 U.S.C. § 1361. The Supreme Court has reserved the question of whether § 1361 jurisdiction is precluded by § 405(h). See Your Home, 525 U.S. at 456-457 n. 3, 119 S.Ct. 930; Ringer, 466 U.S. at 616-617, 104 S.Ct. 2013. Several circuits have had occasion to rule on this issue, including the Eighth Circuit, and have determined that § 1361 jurisdiction is not automatically precluded. See Belles v. Schweiker, 720 F.2d 509, 511-513 (8th Cir. 1983); Burnett v. Bowen, 830 F.2d 731, 737-738 (7th Cir.1987); Monmouth Medical Center v. Thompson, 257 F.3d 807 (D.C.Cir.2001). However, "The common law writ of mandamus, as codified in § 1361, is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." Ringer, 466 U.S. at 616-617, 104 S.Ct. 2013. As discussed above, plaintiff has failed to exhaust its administrative remedies. Therefore, the Court does not have jurisdiction pursuant to § 1361.
Accordingly,
IT IS HEREBY ORDERED that the defendants' motion to dismiss for lack of jurisdiction [# 17] is granted.
*907 IT IS FURTHER ORDERED that all other pending motions in this case are denied as moot.
An order of dismissal in accordance with this Memorandum and Order is separately entered.

DISMISSAL ORDER
In accordance with the Memorandum and Order entered this same date,
IT IS HEREBY ORDERED that this action is dismissed, pursuant to Fed. R.Civ.P. 12(b)(1), for lack of subject matter jurisdiction.