In Re: **MEDICARE REIMBURSEMENT LITIGATION**

**Baystate Heath System**

v.

**Thompson, Civil Action No. 02-0601.**

**MISC.NO. 03–0090(PLF).**

United States District Court, District of Columbia.

March 26, 2004.

---

Arthur S. Garrett, III, Keller & Heckman, LLP, Carin J. Sigel, Gardner, Carton & Douglas, Christopher L. Crosswhite, Duane Morris LLP, Christopher L. Keough, John Martin Faust, Vinson & Elkins, L.L.P, David Howard Eisenstat, John Robert Jacob, Akin, Gump, Strauss, Hauer & Feld, LLP, Jacqueline Elizabeth Bennett, Reed Smith LLP, Mary Susan Philp, Ronald N. Sutter, Powers, Pyles, Sutter & Verville, PC, Robert L. Roth, Crowell & Moring LLP, Stephen M. Seeger, Quagliano and Seeger, P.C., Erling Hansen, Washington, DC, Edward David Kalman, Behar & Kalman, Boston, MA, Frank W. Trapp, Phelps Dunbar LLP, Jackson, MS, James T. Kilbreth, Verrill & Dana, LLP, Portland, ME, Kenneth R. Marcus, West Bloomfield, MI, Murray J. Klein, Reed Smith LLP, Princetown, NJ, Thomas Wayne Coons, Ober, Kaler, Grimes & Shriver, Baltimore, MD, for Plaintiff.

Gerard Keating, U.S. Department of Health & Human Services, Office of the General Counsel, Joshua Z. Rabinovitz, Peter Blumberg, Peter Baker Robbins, Sheila Mae Lieber, U.S. Department of Justice, Robert E. Leidenheimer, Jr., United States Attorneys Office, Civil Division, Washington, DC, Sylvia J. Trujillo, U.S. Dept. of Health & Human Services, Office of the General Counsel, Baltimore, MD, for Defendant.

## OPINION

PAUL L. FRIEDMAN, District Judge.

Plaintiff hospitals in *Baystate Heath System v. Thompson*, Civil Action No. 02–0601(PLF), bring suit for declaratory and injunctive relief in the nature of mandamus, asking the Court to compel defendant, the Secretary of Health and Human Services, through the Centers for Medicare and Medicaid Services ("CMS"), to reopen certain final payment decisions issued by the Secretary's payment agents that pertain to the Secretary's reimbursement of plaintiffs for services they rendered to indigent clients.[1] Defendant filed a motion to dismiss and plaintiffs moved for summary judgment. These two motions are currently before the Court for consideration. The Court heard oral argument on the motions on August 11, 2003.

### I. BACKGROUND

The Medicare statute, Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.*, creates a federally funded health insurance program for the elderly and disabled, known as Medicare and Medicaid. This case arises under Part A of the Medicare program, which authorizes payments for, *inter alia*, certain inpatient hospital services and related post-hospital services. *See* 42 U.S.C. §§ 1395c, 1395d. A hospital may participate in the Medicare program as a provider by entering into a "provider agreement" with the Secretary of Health and Human Services. 42 U.S.C. § 1395cc. Plaintiffs here are not-for-profit acute care hospitals that participate as providers of inpatient hospital services in the federal Medicare program.

The operating costs of inpatient hospital services are reimbursed by Medicare primarily through the Prospective Payment System ("PPS"). *See* 42 U.S.C. § 1395ww(d). The regulations governing the PPS require a provider of inpatient hospital services to file an annual cost report with a "fiscal intermediary." 42 C.F.R. § 413.20(b).[2] The fiscal intermediary—typically an insurance company that acts as the Secretary's agent—then audits the report and makes a final determination of the total amount of payments owed by Medicare to the provider for that fiscal year. The total amount to which a provider is entitled is set forth by the intermediary in an initial Notice of Program Reimbursement ("NPR"). *See* 42 C.F.R. § 405.1803. Under the statute, a provider that is dissatisfied with any aspect of the total payment amount set forth in the initial NPR may timely request a hearing before the Provider Reimbursement Review Board ("Board"), an administrative body composed of five members appointed by the Secretary. See 42 U.S.C. § 1395oo(a) and (h). If the provider objects to the Board's conclusion, it may seek judicial review, provided that the provider files suit within 60 days of the Board's determination. *See* 42 U.S.C. § 1395oo(f)(1).

The PPS contains a number of provisions that adjust reimbursements based on hospital-specific factors. *See* 42 U.S.C. § 1395ww(d)(5). This case involves one of the hospital-specific adjustments, specifically, the disproportionate share adjustment. The "disproportionate share," or "DSH," adjustment requires the Secretary to provide increased PPS reimbursements

---

1. CMS is the component of the Department of Health and Human Services that is responsible for administering the Medicare program and was formerly known as the Health Care Financing Administration ("HCFA").

2. Unless otherwise noted, citations to the Code of Federal Regulations are from that version of the regulations revised as of October 1, 1996.

to hospitals that serve a "significantly disproportionate number of low-income patients." 42 U.S.C. § 1395ww(d)(5)(F)(i)(I). Whether a hospital qualifies for the DSH adjustment, and how large an adjustment it receives, depends on the hospital's "disproportionate patient percentage." *See* 42 U.S.C. § 1395ww(d)(5)(F)(v). The "disproportionate patient percentage" is the sum of two fractions, the "Medicare and Medicaid fractions," for a hospital's fiscal period. 42 U.S.C. § 1395ww(d)(5)(F)(vi).

The computation of the numerator of the "Medicaid" fraction is at the heart of this action. This numerator is calculated by determining the total number of a hospital's inpatient days attributable to patients who "were eligible for medical assistance under a State plan approved under subchapter XIX [*i.e.,* eligible for Medicaid], but who were not entitled to benefits under Part A of this subchapter [Medicare]." 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II). From 1986 through 1997, the Secretary construed the first portion of this numerator calculation to include only those patients who were both eligible for Medicaid payments under the relevant state Medicaid plan *and* who actually received such payments from the state. *See* 42 C.F.R. § 412.106(b)(4). Providers challenged this interpretation, and every circuit court that considered the Secretary's interpretation rejected it. The courts of appeals uniformly concluded that the numerator calculation must include all patient days for which a patient was eligible for Medicaid assistance regardless of whether a state Medicaid program actually paid the hospital for services provided to the patient. *See Cabell Huntington Hospital, Inc. v. Shalala,* 101 F.3d 984, 988 (4th Cir.1996); *Legacy Emanuel Hospital and Health Center v. Shalala,* 97 F.3d 1261, 1266 (9th Cir.1996); *Deaconess Health Services Corp. v. Shalala,* 83 F.3d 1041, 1041 (8th Cir.1996); *Jewish Hospital, Inc. v. Sec'y of Health and Human Services,* 19 F.3d 270, 276 (6th Cir.1994).

In February 1997, the then-Secretary of HHS issued a ruling that rescinded the original interpretation of the statutory provision and prospectively mandated that in calculating the disproportionate patient percentage, the Medicaid numerator must include all inpatient days of patients who were eligible for Medicaid "whether or not the hospital received payment for those inpatient hospital services." Defendant's Motion to Dismiss, Attach., Heath Care Financing Administrative Ruling 97–2 at 2 (Feb. 27, 1997) ("Ruling" or "Ruling 97–2"). In issuing the Ruling, the Secretary did not concede that the prior interpretation was incorrect. Instead, she stated that "[a]lthough HCFA believes that its longstanding interpretation of the statutory language was a permissible reading of the statutory language, HCFA recognizes that, as a result of the adverse court rulings, this interpretation is contrary to the applicable law in four judicial circuits." *Id.* According to the Secretary, the changed interpretation would apply only prospectively, "[i]n order to ensure national uniformity in calculation of DSH adjustments." *Id.* The Ruling also expressly announced that the Secretary would not reopen past NPRs on the basis of this changed statutory interpretation. *See id.*

In response to the Ruling, two hospitals (the "*Monmouth* plaintiffs") sought to have their NPRs for the fiscal years ending in 1993 and 1994 reopened. *See Monmouth Medical Center v. Thompson,* 257 F.3d 807 (D.C.Cir.2001). Under the regulations in effect at the time of the Ruling, there were two methods by which an intermediary had the authority to reopen a final determination. First,

[a] determination or decision ... may be reopened with respect to findings on

matters at issue in such determination or decision ... either on motion of such intermediary officer or panel of hearing officers, Board, or Secretary, or on the motion of the provider affected by such determination or decision to revise any matter in issue at any such proceedings. Any such request to reopen must be made within 3 years of the date of the notice of the intermediary or Board hearing decision, or where there has been no such decision, any such request to reopen must be made within 3 years of the date of notice of the intermediary determination. No such determination or decision may be reopened after such 3–year period except as provided in paragraphs (d) and (e) of this section. 42 C.F.R. § 405.1885(a). Second, the regulations directed that a determination or decision "shall be reopened and revised by the intermediary if, within the aforementioned 3–year period, the HCFA notifies the intermediary that such determination or decision is inconsistent with the applicable law, regulations, or general instructions issued by the HCFA in accordance

with the Secretary's agreement with the intermediary." 42 C.F.R. § 405.1885(b).[3] These review methods are in addition to the direct appeals process of NPRs provided for by the statute. See 42 U.S.C. §§ 1395oo(a)-(f).

Although Ruling 97–2 expressly stated that closed decisions would not be reopened, the *Monmouth* plaintiffs sought recalculation of their DSH payments under Section 405.1885(a) within three years of the issuance of their original NPRs, but to no avail. See *Monmouth Medical Center v. Thompson*, 257 F.3d at 810. These plaintiffs also attempted to proceed through the vertical appeal procedures provided for in 42 U.S.C. § 1395oo, but again were denied. The *Monmouth* plaintiffs then filed suit, alleging three different bases for district court jurisdiction. The district court concluded that it had no jurisdiction and therefore found for defendant; the plaintiffs appealed. The court of appeals determined that jurisdiction existed only under 28 U.S.C. § 1361, the mandamus statute. See *id.* at 814. The court concluded that the Ruling constituted no-

---

3. HHS amended Section 405.1885(b), which amendment took effect October 1, 2002, significantly changing the procedures whereby an intermediary must reopen a final decision. Section 405.1885(b) now reads:

> (b)(1) An intermediary determination or an intermediary hearing decision must be reopened and revised by the intermediary if, within the 3–year period specified in paragraph (a) of this section, CMS—
> (I) Provides notice to the intermediary that the intermediary determination or the intermediary hearing decision is inconsistent with the applicable law, regulations, CMS ruling, or CMS general instructions in effect, and as CMS understood those legal provisions, at the time the determination or decision was rendered by the intermediary; and
> (ii) Explicitly directs the intermediary to reopen and revise the intermediary determination or the intermediary hearing decision.

> (2) A change of legal interpretation or policy by CMS in a regulation, CMS ruling, or CMS general instruction, whether made in response to judicial precedent or otherwise, is not a basis for reopening an intermediary determination or an intermediary hearing decision under this section.
> (3) Notwithstanding paragraph (b)(1)(I) of this section, CMS may direct the intermediary to reopen a particular intermediary determination or intermediary hearing decision in order to implement, for the same intermediary determination or intermediary decision—
> (I) A final agency decision under §§ 405.1833, 405.1871(b), 405.1875, or 405.1877(a) of this part;
> (ii) A final nonappealable court judgment; or
> (iii) An agreement to settle an administrative appeal or a lawsuit.

42 C.F.R. § 405.1885(b)(2002).

tice to the intermediaries that the Secretary's interpretation was inconsistent with applicable law, and that Section 405.1885(b) of the regulations therefore "imposed a clear duty on intermediaries to reopen DSH payment determinations for the hospitals." *Id.* Because Ruling 97–2's prohibition against retroactive reopening conflicted with the regulation's imposition of a clear duty to reopen, the prohibition was a "nullity," and mandamus lay to assure that the plaintiff providers' NPRs were reopened and recalculated. *Id.* at 814–15.

The court of appeals also reviewed the steps the *Monmouth* plaintiffs had taken in seeking relief under Subsection 405.1885(a), noting that "we think it insignificant that, because of the Secretary's own three year limitation, reopening would not be available if sought today. Although mandamamus [*sic*] is classified as a legal remedy, its issuance is largely controlled by equitable principles. Since both hospitals were within the three-year mark when they made their requests for reopening, they are entitled to the reopening that was due them at that time." *Monmouth Medical Center v. Thompson*, 257 F.3d at 815 (internal quotation and citation omitted). The court rejected as irrelevant the Secretary's contention that the hospitals had failed to exhaust their remedies by failing to file proper appeals of their final decisions under Section 1395oo(a) within 180 days of the decisions, concluding that the plaintiffs were challenging the reopening prohibition of the Ruling, which plaintiffs could not have pursued until the Ruling was issued, which occurred more than 180 days after the original NPRs. *See id.* The court expressly noted that "the question is

whether [plaintiffs] have done all they can to vindicate their rights to reopening. We have already shown above how all other avenues of relief [including appeal through Section 1395oo(a) ] are either foreclosed or futile." *Id.*

In this action, plaintiffs filed suit for declaratory and injunctive relief in the nature of mandamus. Plaintiffs argue, *inter alia*, that the *Monmouth* decision requires this Court to direct the intermediaries to reopen and recalculate their NPR's for the three years prior to the Ruling, notwithstanding plaintiffs' failures (1) to request reopenings pursuant to Subsection 405.1885(a); and (2) to proceed through the administrative review channels provided for in the statute and regulations. Defendant filed a motion to dismiss under Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that plaintiffs should be denied mandamus relief on timeliness and equitable grounds, thereby defeating plaintiffs' asserted basis of subject matter jurisdiction under the mandamus statute.[4] In response plaintiffs moved for summary judgment. Upon careful consideration of the pleadings and briefs filed by the parties and the arguments of counsel, the Court concludes that defendant's motion to dismiss should be denied and plaintiffs' motion for summary judgment should be granted. The writ of mandamus therefore will issue.

## II. DISCUSSION

### A. *Standard for Relief in the Nature of Mandamus*

 Disposition of the parties' motions rests on whether mandamus relief is

---

4. Defendant moved pursuant to both Rule 12(b)(1) (lack of subject matter jurisdiction) and Rule 12(b)(6) (failure to state a claim) on the ground that "[t]he question of whether mandamus jurisdiction exists frequently

merges with the merits of the claim for relief." Defendant's Memorandum in Support of His Motion to Dismiss ("Def.'s Mem.") at 8.

available to plaintiffs. Section 1361 of Title 28 provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. The remedy of mandamus "is a drastic one, to be invoked only in extraordinary circumstances." *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34, 101 S.Ct. 188, 66 L.Ed.2d 193 (1980). Mandamus is available only if: "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to plaintiff." *Northern States Power Co. v. U.S. Dep't of Energy*, 128 F.3d 754, 758 (D.C.Cir.1997) (quoting *Council of and for the Blind of Delaware Cty. Valley, Inc. v. Regan*, 709 F.2d 1521, 1533 (D.C.Cir.1983) (en banc)). The party seeking mandamus "has the burden of showing that 'its right to issuance of the writ is clear and indisputable.'" *Northern States Power Co. v. U.S. Dep't of Energy*, 128 F.3d at 758 (quoting *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 289, 108 S.Ct. 1133, 99 L.Ed.2d 296 (1988)).

### B. *Plaintiffs' Clear Right to Relief*

■ It is undisputed that plaintiffs are providers of inpatient hospital services that received NPRs with DSH payment determinations calculated pursuant to the Secretary's prior incorrect interpretation of the Medicaid numerator. Plaintiffs therefore are entitled to a reopening of their NPRs for the three years prior to Ruling 97–2 if plaintiffs meet the remaining prongs of the mandamus standard.

### C. *A Clear Duty to Act: Mandatory Reopening Pursuant to Section 405.1885(b)*

■ Defendant argues that plaintiffs' request for mandamus relief "should be denied at the outset, because unlike the hospitals in *Monmouth*, plaintiffs did not move for reopening of their DSH-payment determinations within three years" of their original NPRs. Def.'s Mem. at 9. It is not disputed that Ruling 97–2 sufficed to serve as notice to the intermediaries that the Secretary's previous interpretation of the Medicaid numerator was inconsistent with the applicable law and that, under *Monmouth*, the Ruling itself imposed a clear, non-discretionary duty on the intermediaries to reopen the payment determinations issued within the three years prior to the Ruling. *See Monmouth Medical Center v. Thompson*, 257 F.3d at 814. As noted by defendant, however, unlike the plaintiffs in *Monmouth*, plaintiffs here did not request reopenings under Section 405.1885(a). The question before this Court therefore is whether Ruling 97–2 also imposed a clear, mandatory duty on Medicare intermediaries to reopen all intermediary determinations rendered in the three-year period prior to the Ruling *even in the absence of a provider's request to do so.* The Court concludes that such a duty does exist.

Under the plain language of Section 405.1885 of the Code of Federal Regulations in effect during the relevant time period there are two circumstances in which an NPR may be reopened. In one such circumstance reopening is discretionary and in the other, reopening is mandatory. Section 405.1885(a) provides that either a hospital provider or the intermediary may move to reopen an NPR or Board Decision within three years of its issuance. *See* 42 C.F.R. § 405.1885(a). This window of opportunity closes after these three years unless the movant establishes that such determination "was procured by fraud or similar fault of any party to the determination or decision."

42 C.F.R. § 405.1885(d).[5] Section 1885.405(b), on the other hand, explicitly directs that reopening "shall" take place if the HCFA notifies the intermediary that an NPR was inconsistent with applicable law. 42 C.F.R. § 405.1885(b).[6] Under *Monmouth*, the mandatory duty to reopen under Section 1885.405(b) was triggered by the Secretary's notice, Ruling 97–2, that the earlier interpretation was inconsistent with applicable law. *See Monmouth Medical Center v. Thompson*, 257 F.3d at 813–14. Reopening therefore was required.

There is no support in the *Monmouth* decision or in the language of the applicable regulations for defendant's position that, in effect, the "request for reopening" requirement of Section 1885.405(a) should be read into or made a condition precedent to the mandatory duty set out in Section 1885.405(b). Subsection (a) of Section 1885.405 provides individual hospitals or intermediaries an opportunity to move to request the reopening of individual NPRs. Subsection (b), by contrast, directs the mandatory retroactive implementation of a change in the regulatory scheme, which is necessary in order to ensure that NPR's are lawful. It would be incongruous to require individual providers to request the reopening of each file pursuant in Subsection (a) in order to implement a required global correction under the statute. Such a requirement would perpetuate an incorrect interpretation of the law because no intermediary would be under an obligation to reopen or revise an erroneous determination even though the Secretary has given notice that the determination was inconsistent with the applicable law. It also would deprive a provider of the application of the correct law to its case unless it formally moves to reopen in a timely fashion.[7]

**5.** Section 405.1885(e), also referenced by Subsection (a), provides that "[p]aragraphs (a) and (b) of this section apply to determinations on cost reporting periods ending on or after December 31, 1971. (See § 405.1801(c).) However, the 3–year period described shall also apply to determinations with respect to cost reporting periods ending prior to December 31, 1971, but only if the reopening action was undertaken after May 27, 1972 (the effective date of regulations which, prior to the publication of this subpart R, governed the reopening of such determinations)." 42 C.F.R. § 405.1885(e).

**6.** The Court rejects defendant's assertion that the Court should apply the current regulation rather than the regulation in effect during the relevant time period. The recent amendment to Section 405.1885(b) requires an order from the CMS to intermediaries to reopen and revise the NPRs on the basis of a prior inconsistency with the applicable law. Application of this new regulation therefore would eliminate the right of plaintiffs to pursue their claim because in this instance CMS gave no such order. Retroactive application of the new regulation would be improper under established case law. *See National Mining Ass'n v.*

*Department of Labor*, 292 F.3d 849, 859 (D.C.Cir.2002) ("In the administrative context, a rule is retroactive if it takes away or impairs vested rights acquired under existing law, or creates a new obligation, imposes a new duty, or attaches a new disability in respect to transactions or considerations already past.") (internal quotation omitted).

**7.** The Court also rejects defendant's argument that if the Secretary had intended to exempt Section 405.1885(b) from the "request" requirement, she would have listed Subsection (b) as an exception to Section 405.1855(a), as she did with Subsections (d) and (e). *See* Defendant's Opposition to Plaintiff's Motion for Summary Judgment and Reply in Support of His Motion to Dismiss at 12. Subsection (d) concerns fraud in the original determination of an individual reimbursement claim, the purview of Subsection (a). It therefore is logical that Subsection (d) is referenced in Subsection (a), and likewise that Subsection (d) expressly indicates its relationship to Subsection (a). *See* 34 C.F.R. § 405.1885(d) ("[n]otwithstanding the provisions of paragraph (a) of this section"). Subsection (b) makes no similar reference to Subsection (a) because it addresses global, not individual,

As defendant points out, the court of appeals in *Monmouth* did note that "under the Secretary's own three year limitation, reopening would not be available if sought today." *Monmouth Medical Center v. Thompson*, 257 F.3d at 815. The *Monmouth* plaintiffs originally brought their requests for reopening under Subsection (a), however, and, in making this comment on timeliness, the court of appeals concluded that reopening pursuant to Subsection (a) would be unavailable if sought three years after the original NPRs. In this action, by contrast, plaintiffs did not pursue relief under Subsection (a)—their claim is a stand-alone claim to enforce the intermediaries' existing duty to reopen under Subsection (b). Because the *Monmouth* plaintiffs brought their claims pursuant to Subsection (a), the court of appeals addressed the path those plaintiffs took. The court of appeals did not discuss the ramifications of its holding for providers who did not file requests for reopenings.

### D. *No Other Adequate Remedy Available*

■ The Court next concludes that plaintiffs lacked any alternative avenue of relief. Defendant argues that plaintiffs should have followed the *Monmouth* plaintiffs' path and filed requests for discretionary review under Subsection (a), but this argument does not withstand scrutiny. First, Ruling 97–2 itself expressly stated that the Secretary *would not* reopen past

NPRs on the basis of her changed statutory interpretation. *See* Ruling at 2. Under defendant's logic, plaintiffs had a duty post-Ruling to exhaust their claims through an administrative process that the Secretary of HHS herself announced was unavailable. This argument is unconvincing.[8] Second, the court in *Monmouth* concluded that a request for review at the time of the original NPRs through the regular agency appeal process was futile. *See Monmouth Medical Center v. Thompson*, 257 F.3d at 815. *See also Bartlett Memorial Medical Center, Inc. v. Thompson*, 347 F.3d 828, 837 (10th Cir.2003) ("[I]t would have been impossible for Plaintiffs to have resolved this issue through an initial appeal to the PRRB within 180 days after the issuance of the NPRs at issue because Ruling 97–2 was not in effect or applied to them until after the 180–day window for appeal had passed."). Finally, the Court rejects defendant's argument that plaintiffs should have requested reopening after the D.C. Circuit in *Monmouth* announced that the Ruling provided notice of the Secretary's prior inconsistent interpretation of the applicable law. While Subsection (b) requires the intermediaries to reopen NPRs in such circumstances, there is no corresponding duty to request reopening on the part of providers, the *Monmouth* plaintiffs' decision to pursue that avenue notwithstanding. *See* Section II(C), *supra*.

changes to NPRs. Any argument based on Subsection (e) also fails to save defendant's claim; Subsection (e) simply indicates the NPRs to which both Subsections (a) and (b) first could have been applied. *See* note 5, *supra*.

8. At oral argument, counsel for the Secretary argued that plaintiffs have failed to exhaust their administrative remedies by failing to file for reopening under Section 405.1885(a) "[b]ecause it was procedurally available to

them even though the intermediary probably would not have reopened because of 97–2." Transcript of Motions Hearing of August 11, 2003, at 35:19–21. Taken to its logical conclusion, the Secretary's argument is that providers should disregard HHS administrative rulings when they disagree with the mandate. The Court cannot conclude that the Secretary would endorse such an option, which likely would result in a significant increase in requests for re-openings even though many, if not most, would be futile.

### E. *No Denial of Mandamus Relief on Equitable Grounds*

■ Defendant argues that irrespective of any clear duty to act by the Secretary, plaintiffs should be denied mandamus relief on several equitable bases. First, defendant asserts that plaintiffs slept on their rights for five years from the time of Ruling 97–2 before filing suit, thereby justifying the Court's denial of the writ. Defendant relies on the D.C. Circuit's opinion in *13th Regional Corp. v. U.S. Dep't of Interior*, 654 F.2d 758, 763 (D.C.Cir.1980), which affirmed the district court's denial of a writ of mandamus because those plaintiffs waited five years from the time the relevant regulation was promulgated to request a writ compelling the agency to conduct a time-sensitive evaluation under the regulation. In this case, however, the Court concludes that plaintiffs did not wait a protracted period of time in pursuing their claims. While the Ruling was issued in 1997, the court of appeals did not decide *Monmouth*—which announced for the first time that the Ruling constituted notice to the intermediaries of the inconsistency with applicable law of the Secretary's prior interpretation—until July 27, 2001. Plaintiffs filed their suit just eight months later on March 29, 2002, hardly an inordinate time lag.

Defendant mixes apples and oranges when he claims that plaintiffs cannot argue both that the Ruling constituted notice to the intermediaries of an inconsistency with applicable law but that it did not give plaintiffs notice of a ground for having their NPRs reopened. As discussed in Section II(C), *supra*, the Secretary's intermediaries had a clear duty to act under Section 405.1885(b) to reopen the relevant NPRs once the intermediaries received notice through the Ruling. Plaintiffs, on the other hand, had no legal duty to request a reopening after the Ruling. Nor, according to the plain language of the Ruling itself, could plaintiffs successfully have requested reopening.

■ Second, defendant argues that reopening all the relevant NPRs would be prejudicial to the public's interest in finality in NPRs, relying on the Supreme Courts's decision in *Your Home Visiting Nurse Services, Inc. v. Shalala*, 525 U.S. 449, 454, 119 S.Ct. 930, 142 L.Ed.2d 919 (1999) (statutory interest in finality of NPRs manifested in limited period for direct appeal). But plaintiffs are not seeking the right to request reopening under Section 405.1885(a); they are seeking a writ compelling the Secretary to do what he is mandated under federal law to do. There is no public interest in maintaining legally infirm NPRs. Furthermore, the Secretary's compliance with applicable law constitutes a separate, compelling public interest. *See Wilkinson v. Legal Services Corp.*, 27 F.Supp.2d 32, 48 (D.D.C.1998) (stating in the context of the *Accardi* doctrine that agencies are bound by their own rules and federal law based on the "founding principle of this Republic" that government officials are bound by the rule of law).

■ Third, defendant asserts that the writ would impose a serious administrative burden on the Secretary. The Court concludes, however, that any such potential burden does not outweigh the public's substantial interest in the Secretary's following the law. Nor does the potential burden outweigh the public's interest in the reimbursement of provider hospitals for services to indigent patients. *See Samaritan Health Center v. Heckler*, 636 F.Supp. 503, 518 (D.D.C.1985). Finally, ordering reopening does not create a "perverse" disincentive for the Secretary to "acquiesce [in] adverse circuit court rulings." Def.'s Mem. at 16. Plaintiffs are not asserting that a new rule should be applied

retroactively, thereby chilling the Secretary's motivation to make prospective rules that accord with circuit decisions. The original rule was an error of law that the intermediaries are required to remedy under Section 405.1885(b). *See* Ruling at 2.

### III. CONCLUSION

The Court concludes that plaintiffs have met their burden of demonstrating that a writ of mandamus should issue in these circumstances. Section 405.1885(b) imposed a clear duty on the Secretary to reopen the relevant NPRs for the three years prior to Ruling 97–2. Plaintiffs have a right to this relief, and have no other avenue by which to pursue their claims. The Court therefore will deny defendant's motion to dismiss, will grant plaintiffs' motion for summary judgment, and will issue the writ of mandamus that plaintiffs seek. An Order consistent with this Opinion shall issue this same day.

SO ORDERED.

### ORDER AND JUDGMENT

For the reasons stated in a separate Opinion issued this same day, it is hereby

ORDERED that Defendant's Motion to Dismiss [9–1] is DENIED; it is

FURTHER ORDERED that plaintiffs' Motion for Summary Judgement [14–1] is GRANTED; it is

FURTHER ORDERED that plaintiffs' petition for a writ of mandamus is GRANTED; it is

FURTHER ORDERED that defendant, the Secretary of Health and Human Services, shall cause his fiscal intermediaries to reopen and revise the Notices of Program Reimbursements issued to plaintiffs within the three-year period prior to February 27, 1997, to include in the Secretary's revised final determination for each affected fiscal year all Medicaid-eligible inpatient days in the numerator of the Medicaid fraction that is used in the calculation of the disproportionate share patient percentage, as defined in 42 U.S.C. § 1395ww(d)(5)(F); it is

FURTHER ORDERED that JUDGMENT is entered for plaintiffs; and it is

FURTHER ORDERED that this Order and Judgment shall constitute a FINAL JUDGMENT in this case. This is a final appealable order. *See* FED. R. APP. P. 4(A).

SO ORDERED.