(Slip Opinion) OCTOBER TERM, 2012 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## SEBELIUS, SECRETARY OF HEALTH AND HUMAN SERVICES *v.* AUBURN REGIONAL MEDICAL CENTER ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 11–1231.   Argued December 4, 2012—Decided January 22, 2013

The reimbursement amount health care providers receive for inpatient services rendered to Medicare beneficiaries is adjusted upward for hospitals that serve a disproportionate share of low-income patients. The adjustment amount is determined in part by the percentage of a hospital's patients who are eligible for Supplemental Security Income (SSI), called the SSI fraction. Each year, the Centers for Medicare & Medicaid Services (CMS) calculates the SSI fraction for an eligible hospital and submits that number to the hospital's "fiscal intermediary," a Department of Health and Human Services (HHS) contractor. The intermediary computes the reimbursement amount due and then sends the hospital a Notice of Program Reimbursement (NPR). A provider dissatisfied with the determination has a right to appeal to the Provider Reimbursement Review Board (PRRB or Board) within 180 days of receiving the NPR. 42 U. S. C. §1395*oo*(a)(3). By regulation, the Secretary of HHS authorized the PRRB to extend the 180-day limit, for good cause, up to three years. See 42 CFR 405.1841(b) (2007).

The Baystate Medical Center—not a party here—timely appealed its SSI fraction calculation for each year from 1993 through 1996. The PRRB found that errors in CMS's methodology resulted in a systematic undercalculation of the disproportionate share adjustment and corresponding underpayments to providers. In March 2006, the Board's *Baystate* decision was made public. Within 180 days, respondent hospitals filed a complaint with the Board, challenging their adjustments for 1987 through 1994. Acknowledging that their challenges were more than a decade out of time, they urged that eq-

uitable tolling of the limitations period was in order due to CMS's failure to tell them about the computation error. The PRRB held that it lacked jurisdiction, reasoning that it had no equitable powers save those legislation or regulation might confer. On judicial review, the District Court dismissed the hospitals' claims. The D. C. Circuit reversed. The presumption that statutory limitations periods are generally subject to equitable tolling, the court concluded, applied to the 180-day time limit because nothing in §1395*oo*(a)(3) indicated that Congress intended to disallow such tolling.

*Held*:

1. The 180-day limitation in §1395*oo*(a)(3) is not "jurisdictional." Pp. 6–9.

(a) Unless Congress has "clearly state[d]" that a statutory limitation is jurisdictional, the restriction should be treated "as nonjurisdictional." *Arbaugh* v. *Y & H Corp.*, 546 U. S. 500, 515–516. "[C]ontext, including this Court's interpretations of similar provisions in many years past," is probative of whether Congress intended a particular provision to rank as jurisdictional. *Reed Elsevier, Inc.* v. *Muchnick*, 559 U. S. ___, ___. If §1395*oo*(a)(3) were jurisdictional, the 180-day time limit could not be enlarged by agency or court.

Section 1395*oo*(a)(3) hardly reveals a design to preclude any regulatory extension. The provision instructs that a provider "may obtain a hearing" by filing "a request . . . within 180 days after notice of the intermediary's final determination." It "does not speak in jurisdictional terms." *Zipes* v. *Trans World Airlines, Inc.*, 455 U. S. 385, 394. This Court has repeatedly held that filing deadlines ordinarily are not jurisdictional; indeed, they have been described as "quintessential claim-processing rules." *Henderson* v. *Shinseki*, 562 U. S. ___, ___. Pp. 6–8.

(b) Court-appointed *amicus* urges that §1395*oo*(a)(3) should be classified as a jurisdictional requirement based on its proximity to §§1395*oo*(a)(1) and (a)(2), both jurisdictional requirements, *amicus* asserts. But a requirement that would otherwise be nonjurisdictional does not become jurisdictional simply because it is in a section of a statute that also contains jurisdictional provisions. *Gonzalez* v. *Thaler*, 565 U. S. ___, ___. *Amicus* also urges that the Medicare Act's express grant of authority for the Secretary to extend the time for beneficiary appeals implies the absence of such leeway for §1395*oo*(a)(3)'s provider appeals. In support, *amicus* relies on the general rule that Congress's use of "certain language in one part of the statute and different language in another" can indicate that "different meanings were intended," *Sosa* v. *Alvarez-Machain*, 542 U. S. 692, 711, n. 9. But that interpretive guide, like other canons of construction, is "no more than [a] rul[e] of thumb" that can tip the scales when a statute

could be read in multiple ways. *Connecticut Nat. Bank* v. *Germain*, 503 U. S. 249, 253. Here, §1395*oo*(a)'s limitation is most sensibly characterized as nonjurisdictional. Pp. 8–9.

2. The Secretary's regulation is a permissible interpretation of §1395*oo*(a)(3). Pp. 10–14.

(a) Congress vested in the Secretary large rulemaking authority to administer Medicare. A court lacks authority to undermine the Secretary's regime unless her regulation is "arbitrary, capricious, or manifestly contrary to the statute." *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U. S. 837, 844. Here, the regulation survives inspection under that deferential standard. The Secretary brought to bear practical experience in superintending the huge program generally, and the PRRB in particular, in maintaining a three-year outer limit for intermediary determination challenges. A court must uphold her judgment as long as it is a permissible construction of the statute, even if the court would have interpreted the statute differently absent agency regulation. Pp. 10–11.

(b) A presumption of equitable tolling generally applies to suits against the United States, *Irwin* v. *Department of Veterans Affairs*, 498 U.S. 89, 95–96, but application of this presumption is not in order for §1395*oo*(a)(3). This Court has never applied *Irwin*'s presumption to an agency's internal appeal deadline. The presumption was adopted in part on the premise that "[s]uch a principle is likely to be a realistic assessment of legislative intent." *Irwin*, 498 U. S., at 95. That premise is inapt in the context of providers' administrative appeals under the Medicare Act. For nearly 40 years the Secretary has prohibited the Board from extending the 180-day deadline, except as provided by regulation. In the six times §1395*oo* has been amended since 1974, Congress has left untouched the 180-day provision and the Secretary's rulemaking authority. Furthermore, the statutory scheme, which applies to sophisticated institutional providers, is not designed to be "'unusually protective' of claimants." *Bowen* v. *City of New York*, 476 U. S. 467, 480. Nor is the scheme one "in which laymen, unassisted by trained lawyers, initiate the process." *Zipes*, 455 U. S., at 397.

The hospitals ultimately argue that the Secretary's regulations fail to adhere to "fundamentals of fair play." *FCC* v. *Pottsville Broadcasting Co.*, 309 U. S. 134, 143. They point to 42 CFR §405.1885(b)(3), which permits reopening of an intermediary's reimbursement determination "at any time" if the determination was procured by fraud or fault of the provider. But this Court has explained that giving intermediaries more time to discover overpayments than providers have to discover underpayments may be justified by the "administrative realities" of the system: a few dozen fiscal intermediaries are charged

Syllabus

with issuing tens of thousands of NPRs, while each provider can concentrate on a single NPR, its own. *Your Home Visiting Nurse Services, Inc.* v. *Shalala*, 525 U. S. 449, 455, 456. Pp. 11–14.

642 F. 3d 1145, reversed and remanded.

GINSBURG, J., delivered the opinion for a unanimous Court. SOTOMAYOR, J., filed a concurring opinion.

NOTICE: This opinion is subject to formal revision before publication in the
preliminary print of the United States Reports.  Readers are requested to
notify the Reporter of Decisions, Supreme Court of the United States, Wash-
ington, D. C. 20543, of any typographical or other formal errors, in order
that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES
_____

No. 11–1231
_____

## KATHLEEN SEBELIUS, SECRETARY OF HEALTH AND HUMAN SERVICES, PETITIONER *v.* AUBURN REGIONAL MEDICAL CENTER ET AL.

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

[January 22, 2013]

JUSTICE GINSBURG delivered the opinion of the Court.

This case concerns the time within which health care providers may file an administrative appeal from the initial determination of the reimbursement due them for inpatient services rendered to Medicare beneficiaries. Government contractors, called fiscal intermediaries, receive cost reports annually from care providers and notify them of the reimbursement amount for which they qualify.  A provider dissatisfied with the fiscal intermediary's determination may appeal to an administrative body named the Provider Reimbursement Review Board (PRRB or Board).  The governing statute, §602(h)(l)(D), 97 Stat. 165, 42 U. S. C. §1395*oo*(a)(3), sets a 180-day limit for filing appeals from the fiscal intermediary to the PRRB. By a regulation promulgated in 1974, the Secretary of the Department of Health and Human Services (HHS) author-ized the Board to extend the 180-day limitation, for good cause, up to three years.[1]

_____

[1] The agency was called the Department of Health, Education, and Welfare until 1979, but for simplicity's sake we refer to it as HHS

The providers in this case are hospitals who appealed to the PRRB more than ten years after expiration of the 180-day statutory deadline. They assert that the Secretary's failure to disclose information that made the fiscal intermediary's reimbursement calculation incorrect prevented them from earlier appealing to the Board. Three positions have been briefed and argued regarding the time for providers' appeals to the PRRB. First, a Court-appointed *amicus curiae* has urged that the 180-day limitation is "jurisdictional," and therefore cannot be enlarged at all by agency or court. Second, the Government maintains that the Secretary has the prerogative to set an outer limit of three years for appeals to the Board. And third, the hospitals argue that the doctrine of equitable tolling applies, stopping the 180-day clock during the time the Secretary concealed the information that made the fiscal intermediary's reimbursement determinations incorrect.

We hold that the statutory 180-day limitation is not "jurisdictional," and that the Secretary reasonably construed the statute to permit a regulation extending the time for a provider's appeal to the PRRB to three years. We further hold that the presumption in favor of equitable tolling does not apply to administrative appeals of the kind here at issue.

I

The Medicare program covers certain inpatient services that hospitals provide to Medicare beneficiaries. Providers are reimbursed at a fixed amount per patient, regardless of the actual operating costs they incur in rendering these services. But the total reimbursement amount is adjusted upward for hospitals that serve a disproportionate share of low-income patients. This adjustment is made because hospitals with an unusually high percent-

–––––––––

throughout this opinion.

age of low-income patients generally have higher per-patient costs; such hospitals, Congress therefore found, should receive higher reimbursement rates. See H. R. Rep. No. 99–241, pt. 1, p. 16 (1985). The amount of the disproportionate share adjustment is determined in part by the percentage of the patients served by the hospital who are eligible for Supplemental Security Income (SSI) payments, a percentage commonly called the SSI fraction. 42 U. S. C. §1395ww(d) (2006 ed. and Supp. V).

At the end of each year, providers participating in Medicare submit cost reports to contractors acting on behalf of HHS known as fiscal intermediaries. Also at year end, the Centers for Medicare & Medicaid Services (CMS) calculates the SSI fraction for each eligible hospital and submits that number to the intermediary for that hospital. Using these numbers to determine the total payment due, the intermediary issues a Notice of Program Reimbursement (NPR) informing the provider how much it will be paid for the year.

If a provider is dissatisfied with the intermediary's reimbursement determination, the statute gives it the right to file a request for a hearing before the PRRB within 180 days of receiving the NPR. §1395*oo*(a)(3) (2006 ed.) In 1974, the Secretary promulgated a regulation, after notice and comment rulemaking, permitting the Board to extend the 180-day time limit upon a showing of good cause; the regulation further provides that "no such extension shall be granted by the Board if such request is filed more than 3 years after the date the notice of the intermediary's determination is mailed to the provider." 39 Fed. Reg. 34517 (1974) (codified in 42 CFR §405.1841(b) (2007)).[2]

_____

[2] In 2008, after this case commenced, the Secretary replaced the 1974 regulation with a new prescription limiting "good cause" to "extraordinary circumstances beyond [the provider's] control (such as a natural or

For many years, CMS released only the results of its SSI fraction calculations and not the underlying data.[3] The Baystate Medical Center—a hospital not party to this case—timely appealed the calculation of its SSI fraction for each year from 1993 through 1996. Eventually, the PRRB determined that CMS had omitted several categories of SSI data from its calculations and was using a flawed process to determine the number of low-income beneficiaries treated by hospitals. These errors caused a systematic undercalculation of the disproportionate share adjustment, resulting in underpayments to the providers. *Baystate Medical Center* v. *Leavitt*, 545 F. Supp. 2d 20, 26–30 (DC 2008); see *id.,* at 57–58 (concluding that CMS failed to use "the best available data").

The methodological errors revealed by the Board's *Baystate* decision would have yielded similarly reduced payments to all providers for which CMS had calculated an SSI fraction. In March 2006, the Board's decision in the *Baystate* case was made public. Within 180 days, the hospitals in this case filed a complaint with the Board seeking to challenge their disproportionate share adjustments for the years 1987 through 1994. The hospitals acknowledged that their challenges, unlike Baystate's timely contest, were more than a decade out of time. But equitable tolling of the limitations period was in order, they urged, due to CMS's failure to inform the hospitals

––––––––––

other catastrophe, fire, or strike)." 73 Fed. Reg. 30250 (2008) (codified in 42 CFR §405.1836(b) (2012)). The new regulation retains the strict three-year cutoff for all claims. §405.1836(c)(2). The parties agree that this case is governed by the 1974 regulation, and our opinion today addresses only that regulation.

[3] In §951 of the Medicare Prescription Drug, Improvement, and Modernization Act of 2003, 117 Stat. 2427, Congress required the Secretary to furnish hospitals with the data necessary to compute their own disproportionate share adjustment. Pursuant to this congressional mandate, the Secretary has adopted procedures for turning over the SSI data to hospitals upon request. 70 Fed. Reg. 47438 (2005).

that their SSI fractions had been based on faulty data.

The PRRB held that it lacked jurisdiction over the hospitals' complaint, reasoning that it had no equitable powers save those legislation or regulation might confer, and that the Secretary's regulation permitted it to excuse late appeals only for good cause, with three years as the outer limit. On judicial review, the District Court dismissed the hospitals' claims for relief, holding that nothing in the statute suggests that "Congress intended to authorize equitable tolling." 686 F. Supp. 2d 55, 70 (DC 2010).

The Court of Appeals reversed. 642 F. 3d 1145 (CADC 2011). It relied on the presumption that statutory limitations periods are generally subject to equitable tolling and reasoned that "'the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States.'" *Id.,* at 1148 (quoting *Irwin* v. *Department of Veterans Affairs*, 498 U. S. 89, 95–96 (1990)). The presumption applies to the 180-day time limit for provider appeals from reimbursement determinations, the Court of Appeals held, finding nothing in the statutory provision for PRRB review indicating that Congress intended to disallow equitable tolling. 642 F. 3d, at 1149–1151.

We granted the Secretary's petition for certiorari, 567 U. S. \_\_\_ (2012), to resolve a conflict among the Courts of Appeals over whether the 180-day time limit in 42 U. S. C. §1395*oo*(a)(3) constricts the Board's jurisdiction. Compare 642 F. 3d 1145 (case below); *Western Medical Enterprises, Inc.* v. *Heckler*, 783 F. 2d 1376, 1379–1380 (CA9 1986) (180-day limit is not jurisdictional and the Secretary may extend it for good cause), with *Alacare Home Health Servs., Inc.* v. *Sullivan*, 891 F. 2d 850, 855–856 (CA11 1990) (statute of limitations is jurisdictional and the Secretary lacked authority to promulgate good-cause exception); *St. Joseph's Hospital of Kansas City* v. *Heckler*, 786

F. 2d 848, 852–853 (CA8 1986) (same).  Beyond the juris-
dictional inquiry,[4] the Secretary asked us to determine
whether the Court of Appeals erred in concluding that
equitable tolling applies to providers' Medicare reim-
bursement appeals to the PRRB, notwithstanding the
Secretary's regulation barring such appeals after three
years.

## II

### A

Characterizing a rule as jurisdictional renders it unique
in our adversarial system.  Objections to a tribunal's ju-
risdiction can be raised at any time, even by a party that
once conceded the tribunal's subject-matter jurisdiction
over the controversy.  Tardy jurisdictional objections can
therefore result in a waste of adjudicatory resources and
can disturbingly disarm litigants.  See *Henderson* v.
*Shinseki*, 562 U. S. ___, ___ (2011) (slip op., at 5); *Arbaugh*
v. *Y & H Corp.*, 546 U. S. 500, 514 (2006).  With these
untoward consequences in mind, "we have tried in recent
cases to bring some discipline to the use" of the term
"jurisdiction." *Henderson*, 562 U. S., at ___ (slip op., at 5);
see also *Steel Co.* v. *Citizens for Better Environment*, 523
U. S. 83, 90 (1998) (jurisdiction has been a "word of many,
too many, meanings" (internal quotation marks omitted)).

To ward off profligate use of the term "jurisdiction,"
we have adopted a "readily administrable bright line" for
determining whether to classify a statutory limitation as
jurisdictional.  *Arbaugh*, 546 U. S., at 516.  We inquire
whether Congress has "clearly state[d]" that the rule is
jurisdictional; absent such a clear statement, we have

---

[4] Because no party takes the view that the statutory 180-day time
limit is jurisdictional, we appointed John F. Manning to brief and argue
this position as *amicus curiae*.  567 U. S. ___ (2012).  *Amicus* Manning
has ably discharged his assigned responsibilities and the Court thanks
him for his well-stated arguments.

cautioned, "courts should treat the restriction as nonjuris-dictional in character." *Id.,* at 515–516; see also *Gonzalez* v. *Thaler*, 565 U. S. \_\_\_, \_\_\_ (2012) (slip op., at 6); *Hender-son*, 562 U. S*.,* at \_\_\_ (slip op., at 6). This is not to say that Congress must incant magic words in order to speak clearly. We consider "context, including this Court's inter-pretations of similar provisions in many years past," as probative of whether Congress intended a particular provision to rank as jurisdictional. *Reed Elsevier, Inc.* v. *Muchnick*, 559 U. S. 154, 168 (2010); see also *John R. Sand & Gravel Co.* v. *United States*, 552 U. S. 130, 133–134 (2008).

We reiterate what it would mean were we to type the gov-erning statute, 42 U. S. C. §1395*oo*(a)(3), "jurisdictional." Under no circumstance could providers engage PRRB re-view more than 180 days after notice of the fiscal inter-mediary's final determination. Not only could there be no equitable tolling. The Secretary's regulation providing for a good-cause extension, see *supra,* at 3, would fall as well.

The language Congress used hardly reveals a design to preclude any regulatory extension. Section 1395*oo*(a)(3) instructs that a provider of services "may obtain a hear-ing" by the Board regarding its reimbursement amount if "such provider files a request for a hearing within 180 days after notice of the intermediary's final determina-tion." This provision "does not speak in jurisdictional terms." *Zipes* v. *Trans World Airlines, Inc.*, 455 U. S. 385, 394 (1982). Indeed, it is less "jurisdictional" in tone than the provision we held to be nonjurisdictional in *Henderson*. There, the statute provided that a veteran seeking Veter-ans Court review of the Department of Veterans Affairs' determination of disability benefits "*shall* file a notice of appeal . . . within 120 days." 562 U. S., at \_\_\_ (slip op., at 9) (quoting 38 U. S. C. §7266(a) (emphasis added)). Sec-tion 1395*oo*(a)(3), by contrast, contains neither the manda-tory word "shall" nor the appellation "notice of appeal,"

words with jurisdictional import in the context of 28 U. S. C. §2107's limitations on the time for appeal from a district court to a court of appeals. See *Bowles* v. *Russell*, 551 U. S. 205, 214 (2007).

Key to our decision, we have repeatedly held that filing deadlines ordinarily are not jurisdictional; indeed, we have described them as "quintessential claim-processing rules." *Henderson,* 562 U. S., at ___ (slip op., at 6); see also *Scarborough* v. *Principi*, 541 U. S. 401, 414 (2004) (filing deadline for fee applications under Equal Access to Justice Act); *Kontrick* v. *Ryan*, 540 U. S. 443, 454 (2004) (filing deadlines for objecting to debtor's discharge in bankruptcy); *Honda* v. *Clark*, 386 U. S. 484, 498 (1967) (filing deadline for claims under the Trading with the Enemy Act). This case is scarcely the exceptional one in which a "century's worth of precedent and practice in American courts" rank a time limit as jurisdictional. *Bowles*, 551 U. S., at 209, n. 2; cf. *Kontrick*, 540 U. S., at 454 (a time limitation may be emphatic, yet not jurisdictional).

B

*Amicus* urges that the three requirements in §1395*oo*(a) are specifications that together define the limits of the PRRB's jurisdiction. Subsection (a)(1) specifies the claims providers may bring to the Board, and subsection (a)(2) sets forth an amount-in-controversy requirement. These are jurisdictional requirements, *amicus* asserts, so we should read the third specification, subsection (a)(3)'s 180-day limitation, as also setting a jurisdictional requirement.

Last Term, we rejected a similar proximity-based argument. A requirement we would otherwise classify as nonjurisdictional, we held, does not become jurisdictional simply because it is placed in a section of a statute that also contains jurisdictional provisions. *Gonzalez*, 565 U. S., at ___ (slip op., at 11); see *Weinberger* v. *Salfi*, 422

U. S. 749, 763–764 (1975) (statutory provision at issue contained three requirements for judicial review, only one of which was jurisdictional).

*Amicus* also argues that the 180-day time limit for provider appeals to the PRRB should be viewed as jurisdictional because Congress could have expressly made the provision nonjurisdictional, and indeed did so for other time limits in the Medicare Act. *Amicus* notes particularly that when Medicare beneficiaries request the Secretary to reconsider a benefits determination, the statute gives them a time limit of 180 days or "such additional time as the Secretary may allow." 42 U. S. C. §1395ff(b)(1)(D)(i); see also §1395ff(b)(1)(D)(ii) (permitting Medicare beneficiary to request a hearing by the Secretary within "time limits" the Secretary "shall establish in regulations"). We have recognized, as a general rule, that Congress's use of "certain language in one part of the statute and different language in another" can indicate that "different meanings were intended." *Sosa* v. *Alvarez-Machain*, 542 U. S. 692, 711, n. 9 (2004) (internal quotation marks omitted). *Amicus* notes this general rule in urging that an express grant of authority for the Secretary to extend the time for beneficiary appeals implies the absence of such leeway for provider appeals.

But the interpretive guide just identified, like other canons of construction, is "no more than [a] rul[e] of thumb" that can tip the scales when a statute could be read in multiple ways. *Connecticut Nat. Bank* v. *Germain*, 503 U. S. 249, 253 (1992). For the reasons earlier stated, see *supra,* at 6–8, we are persuaded that the time limitation in §1395*oo*(a) is most sensibly characterized as a nonjurisdictional prescription. The limitation therefore does not bar the modest extension contained in the Secretary's regulation.

### III

We turn now to the question whether §1395*oo*(a)(3)'s 180-day time limit for a provider to appeal to the PRRB is subject to equitable tolling.

### A

Congress vested in the Secretary large rulemaking authority to administer the Medicare program. The PRRB may adopt rules and procedures only if "not inconsistent" with the Medicare Act or "regulations of the Secretary." 42 U. S. C. §1395*oo*(e). Concerning the 180-day period for an appeal to the Board from an intermediary's reimbursement determination, the Secretary's regulation implementing §1395*oo*, adopted after notice and comment, speaks in no uncertain terms:

> "A request for a Board hearing filed after [the 180-day time limit] shall be dismissed by the Board, except that for good cause shown, the time limit may be extended. However, no such extension shall be granted by the Board if such request is filed more than 3 years after the date the notice of the intermediary's determination is mailed to the provider." 42 CFR §405.1841(b) (2007).

The Secretary allowed only a distinctly limited extension of time to appeal to the PRRB, cognizant that "the Board is burdened by an immense caseload," and that "procedural rules requiring timely filings are indispensable devices for keeping the machinery of the reimbursement appeals process running smoothly." *High Country Home Health, Inc.* v. *Thompson*, 359 F. 3d 1307, 1310 (CA10 2004). Imposing equitable tolling to permit appeals barred by the Secretary's regulation would essentially gut the Secretary's requirement that an appeal to the Board "shall be dismissed" if filed more than 180 days after the NPR, unless the provider shows "good cause" and requests

an extension *no later than* three years after the NPR. A court lacks authority to undermine the regime established by the Secretary unless her regulation is "arbitrary, capricious, or manifestly contrary to the statute." *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U. S. 837, 844 (1984).

The Secretary's regulation, we are satisfied, survives inspection under that deferential standard. As HHS has explained, "[i]t is in the interest of providers and the program that, at some point, intermediary determinations and the resulting amount of program payment due the provider or the program become no longer open to correction." CMS, Medicare: Provider Reimbursement Manual, pt. 1, ch. 29, §2930, p. 29–73 (rev. no. 372, 2011); cf. *Taylor* v. *Freeland & Kronz*, 503 U. S. 638, 644 (1992) ("Deadlines may lead to unwelcome results, but they prompt parties to act and produce finality."). The Secretary brought to bear practical experience in superintending the huge program generally, and the PRRB in particular, in maintaining three years as the outer limit. A court must uphold the Secretary's judgment as long as it is a permissible construction of the statute, even if it differs from how the court would have interpreted the statute in the absence of an agency regulation. *National Cable & Telecommunications Assn.* v. *Brand X Internet Services*, 545 U. S. 967, 980 (2005); see also *Chevron*, 467 U. S., at 843, n. 11.

B

Rejecting the Secretary's position, the Court of Appeals relied principally on this Court's decision in *Irwin,* 498 U. S., at 95–96. *Irwin* concerned the then 30-day time period for filing suit against a federal agency under Title VII of the Civil Rights Act of 1964, 42 U. S. C. §2000e–16(c) (1988 ed.). We held in *Irwin* that "the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits

against the United States." 498 U. S., at 95–96. *Irwin* itself, and equitable-tolling cases we have considered both pre- and post-*Irwin*, have generally involved time limits for filing suit in federal court. See, *e.g.*, *Holland* v. *Florida*, 560 U. S. ___ (2010) (one-year limitation for filing application for writ of habeas corpus); *Rotella* v. *Wood*, 528 U. S. 549 (2000) (four-year period for filing civil RICO suit); *United States* v. *Beggerly*, 524 U. S. 38 (1998) (12-year period to bring suit under Quiet Title Act); *Lampf, Pleva, Lipkind, Prupis & Petigrow* v. *Gilbertson*, 501 U. S. 350 (1991) (one- and three-year periods for commencing civil action under §10(b) of the Securities Exchange Act of 1934); *Honda* v. *Clark*, 386 U. S. 484 (1967) (60-day period for filing suit under Trading with the Enemy Act); *Kendall* v. *United States*, 107 U. S. 123 (1883) (six-year period for filing suit in Court of Claims). Courts in those cases rendered in the first instance the decision whether equity required tolling.

This case is of a different order. We have never applied the *Irwin* presumption to an agency's internal appeal deadline, here the time a provider has to appeal an intermediary's reimbursement determination to the PRRB. Cf. *United States* v. *Brockamp*, 519 U. S. 347, 350 (1997) (assuming, *arguendo*, that *Irwin* presumption applied to time limit for filing an administrative claim for a tax refund, but concluding based on statutory text, structure, and purpose that there was "good reason to believe that Congress did *not* want the equitable tolling doctrine to apply").

The presumption of equitable tolling was adopted in part on the premise that "[s]uch a principle is likely to be a realistic assessment of legislative intent." *Irwin*, 498 U. S., at 95. But that premise is inapt in the context of providers' administrative appeals under the Medicare Act. The Act, until 1972, provided no avenue for providers to obtain administrative or judicial review. When Congress

first directed the Secretary to establish the PRRB, Congress simultaneously imposed the 180-day deadline, with no statutory exceptions. For nearly 40 years the Secretary has prohibited the Board from extending that deadline, except as provided by regulation. And until the D. C. Circuit's decision in this case, no court had ever read equitable tolling into §1395*oo*(a)(3) or the Secretary's implementation of that provision. Congress amended §1395*oo* six times since 1974, each time leaving untouched the 180-day administrative appeal provision and the Secretary's rulemaking authority. At no time did Congress express disapproval of the three-year outer time limit set by the Secretary for an extension upon a showing of good cause. See *Commodity Futures Trading Comm'n* v. *Schor*, 478 U. S. 833, 846 (1986) ("[W]hen Congress revisits a statute giving rise to a longstanding administrative interpretation without pertinent change, the congressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended by Congress." (internal quotation marks omitted)).

We note, furthermore, that unlike the remedial statutes at issue in many of this Court's equitable-tolling decisions, see *Irwin*, 498 U. S., at 91; *Bowen* v. *City of New York*, 476 U. S. 467, 480 (1986); *Zipes*, 455 U. S., at 398, the statutory scheme before us is not designed to be "'unusually protective' of claimants." *Bowen*, 476 U. S., at 480. Nor is it one "in which laymen, unassisted by trained lawyers, initiate the process." *Zipes*, 455 U. S., at 397 (internal quotation marks omitted). The Medicare payment system in question applies to "sophisticated" institutional providers assisted by legal counsel, and "generally capable of identifying an underpayment in [their] own NPR within the 180-day time period specified in 42 U. S. C. §1395*oo*(a)(3)." *Your Home Visiting Nurse Services, Inc.* v. *Shalala*, 525 U. S. 449, 456 (1999). As repeat players who elect to participate in the Medicare system, providers can

hardly claim lack of notice of the Secretary's regulations.

The hospitals ultimately argue that the Secretary's regulations fail to adhere to the "fundamentals of fair play." *FCC* v. *Pottsville Broadcasting Co.*, 309 U. S. 134, 143 (1940). They point, particularly, to 42 CFR §405.1885(b)(3) (2012), which permits reopening of an intermediary's reimbursement determination "at any time if it is established that such determination . . . was procured by fraud or similar fault of any party to the determination."[5]

We considered a similar alleged inequity in *Your Home* and explained that it was justified by the "administrative realities" of the provider reimbursement appeal system. 525 U. S., at 455. There are only a few dozen fiscal inter-mediaries and they are charged with issuing tens of thou-sands of NPRs, while each provider can concentrate on a single NPR, its own. *Id.,* at 456. The Secretary, *Your Home* concluded, could reasonably believe that this asym-metry justifies giving the intermediaries more time to discover overpayments than the providers have to discover underpayments. Moreover, the fraud exception allowing indefinite reopening does apply to an intermediary if it "procured" a Board decision by "fraud or similar fault." Although an intermediary is not a party to its own deter-mination, it does rank as a party in proceedings before the Board. 42 CFR §405.1843(a).[6]

––––––––––

[5] Because neither the Secretary nor the intermediary counts as a party to the intermediary's determination, 42 CFR §405.1805, providers alone are subject to this exception to the time limitation.

[6] The fraud exception apart, reopening time is limited to three years. §405.1885(a). Within that time, reopening may be sought by the intermediary, the Board, the Secretary, or the provider. Thus an intermediary determination or Board decision could not be reopened if, outside the three-year window, the Secretary discovered errors in calculating the SSI fraction that resulted in overpayments to providers.

\*      \*      \*

We hold, in sum, that the 180-day statutory deadline for administrative appeals to the PRRB, contained in 42 U. S. C. §1395*oo*(a)(3), is not "jurisdictional." Therefore the Secretary lawfully exercised her rulemaking authority in providing for a three-year "good cause" extension. We further hold that the equitable tolling presumption our *Irwin* decision approved for suits brought in court does not similarly apply to administrative appeals of the kind here considered, and that the Secretary's regulation, 42 CFR §405.1841(b), is a permissible interpretation of the statute.

The judgment of the United States Court of Appeals for the District of Columbia Circuit is therefore reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

_____

No. 11–1231

_____

KATHLEEN SEBELIUS, SECRETARY OF HEALTH
AND HUMAN SERVICES, PETITIONER *v.* AU-
BURN REGIONAL MEDICAL CENTER ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

[January 22, 2013]

JUSTICE SOTOMAYOR, concurring.

The Court holds that the presumption in favor of equitable tolling that we adopted in *Irwin* v. *Department of Veterans Affairs*, 498 U. S. 89, 95–96 (1990), does not apply to 42 U. S. C. §1395*oo*(a)(3)'s nonjurisdictional 180-day deadline for health care providers to file administrative appeals with the Provider Reimbursement Review Board (PRRB), and that the Secretary's regulation limiting "good cause" extensions of that deadline to three years is a permissible interpretation of the statute. I agree with those holdings and join the Court's opinion in full. I write separately to note that the Court's decision in this case does not establish that equitable tolling principles are irrelevant to internal administrative deadlines in all, or even most, contexts.

The Court is correct that our equitable tolling cases have typically involved deadlines to bring suit in federal court. *Ante,* at 12. But we have never suggested that the presumption in favor of equitable tolling is generally inapplicable to administrative deadlines. Cf. *Henderson* v. *Shinseki*, 562 U. S. ___, ___, n. 4 (2011) (slip op., at 12, n. 4) (noting that the Government did not dispute whether the statutory filing deadline in the Article I Veterans Court was subject to equitable tolling if the deadline was

nonjurisdictional); *United States* v. *Brockamp*, 519 U. S. 347, 350–353 (1997) (assuming without deciding that the *Irwin* presumption applied to administrative tax refund claims but finding based on statutory text, structure, and the underlying subject matter that tolling was unavailable); see also *ante,* at 12 (discussing *Brockamp*). And we have previously applied the *Irwin* presumption outside the context of filing deadlines in Article III courts. See *Young* v. *United States*, 535 U. S. 43, 49–53 (2002) (applying the presumption to a limitations period in bankruptcy proceedings); cf. *Zipes* v. *Trans World Airlines, Inc.*, 455 U. S. 385, 392–398 (1982) (holding that the statutory time limit for filing charges with the Equal Employment Opportunity Commission was "not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling").

In administrative settings other than the one presented here, I believe the "background principle" that limitations periods "are customarily subject to equitable tolling," *Young*, 535 U. S., at 49–50 (internal quotation marks omitted), may limit an agency's discretion to make filing deadlines absolute. The Court quite properly observes that the question whether equitable tolling is available turns on congressional intent. See *ante,* at 13. "[A] realistic assessment" of that intent, *Irwin*, 498 U. S., at 95, may vary by context.

In this case, given the nature of the statutory scheme, which "applies to 'sophisticated' institutional providers" who are "repeat players" in the Medicare system, and the statute's history, I agree that it would distort congressional intent to presume that the PRRB's administrative deadline should be subject to equitable tolling. *Ante,* at 12–14 (quoting *Your Home Visiting Nurse Services, Inc.* v. *Shalala*, 525 U. S. 449, 456 (1999)). By contrast, with respect to remedial statutes designed to protect the rights

of unsophisticated claimants, see *ante,* at 13, agencies (and reviewing courts) may best honor congressional intent by presuming that statutory deadlines for administrative appeals are subject to equitable tolling, just as courts presume comparable judicial deadlines under such statutes may be tolled. Because claimants must generally pursue administrative relief before seeking judicial review, see *Woodford* v. *Ngo*, 548 U. S. 81, 88–91 (2006), a contrary approach could have odd practical consequences and would attribute a strange intent to Congress: to protect a claimant's ability to seek judicial review of an agency's decision by making equitable tolling available, while leaving to the agency's discretion whether the same claimant may invoke equitable tolling in order to seek an administrative remedy in the first place.

Even in cases where the governing statute clearly delegates to an agency the discretion to adopt rules that limit the scope of equitable exceptions to administrative deadlines, I believe "cases may arise where the equities in favor of tolling the limitations period are 'so great that deference to the agency's judgment is inappropriate.'" *Bowen* v. *City of New York*, 476 U. S. 467, 480 (1986) (quoting *Mathews* v. *Eldridge*, 424 U. S. 319, 330 (1976)). In particular, efforts by an agency to enforce tight filing deadlines in cases where there are credible allegations that filing delay was due to the agency's own misfeasance may not survive deferential review. While equitable tolling extends to circumstances outside both parties' control, the related doctrines of equitable estoppel and fraudulent concealment may bar a defendant from enforcing a statute of limitation when its own deception prevented a reasonably diligent plaintiff from bringing a timely claim. See *United States* v. *Beggerly*, 524 U. S. 38, 49–50 (1998) (Stevens, J., concurring) (noting that these doctrines are distinct); see generally 2 C. Corman, Limitation of Actions §§9.1, 9.7 (1991) (describing the doctrines).

In *Bowen*, we applied the basic principle underlying these doctrines to an agency's conduct, as we concluded that a 60-day deadline to seek judicial review of the administrative denial of disability benefits should be tolled because the Social Security Administration's "'secretive conduct prevent[ed] plaintiffs from knowing of a violation of rights.'" 476 U. S., at 481 (quoting *New York* v. *Heckler*, 742 F. 2d 729, 738 (CA2 1984)).

While the providers in this case allege that the agency's failure to disclose information about how it calculated the Supplemental Security Income fraction prevented them from bringing timely challenges to reimbursement determinations, I am satisfied that the Secretary's 3-year good-cause exception is a reasonable accommodation of the competing interests in administrative efficiency and fairness. We would face a different case if the Secretary's regulation did not recognize an exception for good cause or defined good cause so narrowly as to exclude cases of fraudulent concealment and equitable estoppel. See *ante,* at 3, n. 2 (explaining that the Secretary's amended regulation limiting the scope of "'good cause,'" 73 Fed. Reg. 30250 (2008) (codified in 42 CFR §405.1836(b) (2012)), is not before us).

With these observations, I join the Court's opinion in full.